BARBARA L. JOHNSON (admitted in pro hac)
barbarajohnson@paulhastings.com
DONNA D. MELBY (admitted in pro hac)
donnamelby@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

JAY A. ZWEIG
jay.zweig@bryancave.com
BRYAN CAVE LLP
One Renaissance Square
Two North Central Ave., Suite 2200
Phoenix, AZ 85004-4406
Telephone: (602) 364-7300
Facsimile: (602) 716-8300


Attorneys for Defendant
SMITHKLINE BEECHAM CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL SHANE CHRISTOPHER, filing individually and on behalf of all others similarly situated; and FRANK BUCHANAN, filing individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE,<br><br>Defendant. | CASE NO. 08-CV-01498-FJM<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND FOR *HOFFMANN-LAROCHE* NOTICE**<br><br>**ORAL ARGUMENT REQUESTED** |

## I. INTRODUCTION

Michael Christopher and Frank Buchanan ("Plaintiffs") ask this Court to conditionally certify a nationwide collective action for a group of "GSK Pharmaceutical

Representatives" (hereinafter "PSRs") (Pls.' Mot. for Conditional Class Certification (hereinafter "Pls.' Mot.") at ¶ 1). Plaintiffs' nearly identical, boilerplate declarations—the sole evidence submitted in support of the Motion—are insufficient evidence to prove that such a group exists. Moreover, the Motion is insufficient as a matter of law. It rests on a contrived, one-sided construction of the standard the Court must apply in ruling on a conditional certification motion.

A. **The Applicable Standard May Be "Lenient," But Plaintiffs Still Must Provide Meaningful Evidence of Material Similarity.**

Plaintiffs recount at great length the "lenient" standard they claim the Court must apply in determining whether conditional collective action status is warranted. The applicable standard is relaxed, to be sure, but it is a standard nonetheless. *See, e.g., Simmons v. T-Mobile USA, Inc.*, No. CIV.A.H 06-1820, 2007 WL 210008, at *7-8 (S.D. Tex. Jan. 24, 2007) (despite producing approximately two dozen declarations, plaintiff was unable to meet his burden "even under a lenient standard"). Before any certification and notice, Plaintiffs' evidence must provide a reason for the Court to believe that the purported collective action group is sufficiently homogeneous in material respects (here, the factors relevant to the FLSA's exemptions) to permit testimony from a few witnesses to serve as the testimony of all.

B. **Plaintiffs' Boilerplate, Conclusory Declarations Do Not Suffice.**

Even measured against the "lenient" standard in which Plaintiffs place so much faith, their evidentiary showing is insufficient. Plaintiffs have submitted nothing but their own declarations as evidence that all of Defendant's PSRs purportedly are similarly situated. Each of Plaintiffs' declarations states—in identically worded, conclusory language—that PSRs "all have the same basic duties." Pls.' Decls. at ¶ 12. Plaintiffs purport to represent over 6,000 PSRs, yet they identify only 6 PSR job titles, Pls.' Mot. at 3, when there are between 50 and 100 job titles, depending on the point in time, for PSRs. The boilerplate, unsubstantiated statements in Plaintiffs' declarations cannot alone support conditional certification of a collective action. *See Trinh v. JP Morgan Chase &*

*Co.*, No. 07-CV-1666 W (WMC), 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) (denying conditional certification of an FLSA collective action because plaintiffs "provide[d] no real evidence, beyond their own speculative beliefs," contained in plaintiffs' affidavits, that they were similarly situated to the putative class).

   C.   **Notice, When Appropriate, Facilitates Case Administration, But That Is Not the Case Here.**

Notice now, when the record Plaintiffs present is so incomplete and so little is known about the shape the case will take, will certainly not further, and may well undermine, case management interests.

Conditional collective action certification should be denied.

II.   **STATEMENT OF FACTS**

   A.   **GSK's Organizational Structure.**

SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK") is the U.S. operating company of the world's second largest pharmaceutical company, the GSK Group. *See* Sons Decl., attached hereto as Exhibit A, at ¶ 4. The GSK Group was shaped by a series of acquisitions and mergers, in this country and abroad, including, most recently, the 2000-01 merger of Glaxo Wellcome and SmithKline Beecham. *Id.* The Group employs over 100,000 employees worldwide and approximately 25,000 employees in the United States. *Id.* GSK sells over seventy different prescription drug products that treat major disease areas, including asthma and other respiratory conditions, HIV/AIDS, mental health, migraines, diabetes, heart failure, digestive conditions and cancer. *Id.* at ¶ 5. GSK is also an industry leader in the area of vaccines. *Id.* Currently, there are over 6,000 sales representative employees in U.S. Pharma for GSK. *Id.* at ¶ 13.

At GSK, there is no single, homogeneous "sales organization." Sons Decl. at ¶ 6. All sales representatives do not report up to a single senior sales executive; they report up a chain of command to the leaders of the various "business units" or divisions. *Id.* Those business units are organized to reflect the very different products and sales models each unit handles: Pharmaceuticals ("General Pharma"), Payor Markets, Oncology, Vaccines,

and HIV and Immunology.[1] *Id.* at ¶ 7. Several of these business units, including General Pharma and Oncology, are further divided into smaller sales groups based on the types of pharmaceuticals sold and the accounts for whom PSRs will be responsible. *Id.* There are many different job titles for PSRs within GSK's various business units. *Id.* at ¶ 12. Over time, GSK has had between 50 and 100 job titles for PSR positions. *Id.*

B. **The Sales Representative Positions.**

Because the target markets, distribution models, and underlying science of GSK's prescription drugs vary dramatically, the methodologies GSK uses to sell these drugs vary as well. Sons Decl. at ¶ 8. And because the methodologies vary, so too do the day-to-day job duties of the responsible sales professionals assigned to each business unit. *Id.* at ¶¶ 8-9. Plaintiffs do not — and could not — assert that a PSR in the Medical Center Sales group in General Pharma, for example, could "fill-in" for a PSR who is an Immunization Specialist in the Vaccines division. *See id.* at ¶ 9, Exs. A, B. The training, the science, the sales methods, and the types of customers — and, indeed, the type of PSR — all vary according to the applicable business unit in ways that belie Plaintiffs' attempted portrayal of GSK PSRs' jobs as "fungible." *See generally id.* at ¶ 9, Exs. A-F.

III. **PLAINTIFFS HAVE FAILED TO SUPPORT THEIR MOTION WITH ANY PROBATIVE, ADMISSIBLE EVIDENCE**

A. **The Collective Action Procedure Works Only When There Is Material Homogeneity.**

The collective action procedure is intended to facilitate the "efficient resolution…of [material] common issues of law and fact." *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). A collective action should be sustained only when the employees in the putative collective class are "similarly situated" to one another. 29 U.S.C. § 216(b) (2006). In such a case, representative proof from a comparatively small

---

[1] Prior to January 1, 2009, the sales organization consisted of the following business units: Vaccines, HIV, Neurohealth, Critical and Supportive Care (formerly Acute Care), Oncology, Managed Markets, and the two General Pharmaceutical (or "Pharma") teams (Research Triangle Park (or RTP) Pharma and Philadelphia (or Philly) Pharma). Sons Decl. at ¶ 7.

number of witnesses can facilitate efficient resolution of a case where, for example, those witnesses can testify about the job duties of a larger group of employees allegedly misclassified by their employer.

If the day-to-day work tasks of those in the putative class are materially different in ways relevant to the exemption question, however, the "collective action" process is unsustainable. When any material level of heterogeneity exists, "[t]o determine which employees are entitled to overtime compensation ... [the fact-finder must undertake] an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria." *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000).

Thus, the "similarly situated" question "must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." *Id.* That is why the authority to issue notice should be exercised only in "appropriate cases." *Hoffmann-La Roche*, 493 U.S. at 169.

B. **Even at the Pre-Discovery Stage, Plaintiffs Must Make an Evidentiary Showing of Homogeneity.**

Courts apply a two-tiered approach to determine whether plaintiffs are similarly situated to each other and to other individuals for the purpose of certifying a § 216(b) collective action. *Trinh*, 2008 WL 1860161, at *3. In the first or "notice" stage, the Court makes this determination based on the pleadings and any affidavits that have been submitted by the parties. *Id.* Plaintiffs have the burden of making "*substantial* allegations that the putative class members were together the victims" of an illegal plan by their employer to deprive them of wages. *Id.* (emphasis added). "Substantial allegations" are "detailed allegations supported by affidavits which successfully engage a defendant's affidavits to the contrary." *Id.* (citing *Hipp v. Nat'l Liberty Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).

Plaintiffs must provide *details* of the extent to which all putative class members are

similar. Simple, conclusory statements like those made by Plaintiffs here that plaintiffs and the putative class had "essentially the same job description and training and were compensated in the same manner" are not enough. *Trinh*, 2008 WL 1860161, at *3; *see also Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y. 1995) (plaintiff must "provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."). "[R]eal evidence, beyond [Plaintiffs'] own speculative beliefs" is required for conditional certification of a collective action. *Trinh*, 2008 WL 1860161, at *4.

### 1. **Plaintiffs Have Been Unable to Show the Existence of Others Who Desire to Opt-In.**

The two Plaintiffs have not identified a single individual other than themselves who desires to opt in to their putative collective action. "[B]efore facilitating notice [at the conditional certification stage], a district court should satisfy itself that there are other employees who desire to 'opt in.'" *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259-60 (11th Cir. 2008) (citing *Dybach v. State of Florida Department of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (internal quotation omitted)).

Discovery has only just begun, but that does not prevent Plaintiffs from offering facts in support of their motion or from demonstrating the existence of other PSRs who are willing to opt in. Plaintiffs each worked for Defendant for approximately four years, *see* Compl. at ¶¶ 8, 10, during which time Plaintiffs by their own admission met and conversed with other PSRs "both in [their] own work areas and at national and regional GSK meetings, conventions, and training sessions." Pls.' Decls. at ¶ 4. In fact, Buchanan was a GSK trainer, who trained other PSRs. Buchanan Decl. at ¶¶ 4, 22-23. The fact that Plaintiffs have not yet found a single PSR willing to opt in to this litigation speaks volumes.

### 2. **Plaintiffs' Evidence Does Not Support a Finding that Members of the Putative Class Are Similarly Situated.**

Plaintiffs' evidentiary proffer on "similarity" is inadequate. They seek certification

LEGAL_US_E # 83243091.7

-6-

of a collective class of all GSK's PSRs, regardless of their title, their geographic location, the products they sell or to whom, and the particular business unit for which they work.[2] Plaintiffs have submitted virtually no evidence at all, much less evidence adequate to demonstrate that despite these differences, PSRs are so fungible that testimony from one would effectively be testimony from all. Instead, Plaintiffs hide behind the supposedly "lenient" or "relaxed" standard often applied at the "notice" stage of an FLSA collective action. As many cases make plain, however, even this "modest" standard requires consequential proof,[3] and Plaintiffs' paltry evidentiary showing—their own subjective beliefs and conclusory assertions—does not support notice to any group of GSK employees, much less the all-encompassing group they propose.

### 3. Plaintiffs' Declarations Lack Probative Value.

Plaintiffs have submitted nothing but their own declarations — which are identical in nearly every respect save the names, dates and loci of employment, and job title(s)—to support their allegations of similarity between themselves and the members of the proposed collective action. These declarations purport to show that all of GSK's PSRs do the same work on a day-to-day basis.[4] In fact, Plaintiffs' self-serving declarations provide no evidence to support that claim.

---

[2] Plaintiffs seek certification of a collective class of all PSRs, nationwide. *See* Pls.' Notice of Correction Pertaining to Pls.' Mot. for Collective Action Certification and for *Hoffmann-LaRoche* Notice [Docket # 32].
[3] A list of cases denying pre-discovery notice for failure to satisfy even the "lenient" standard would stretch for pages, but the following is a representative sample drawn solely from 2007-2008. *See, e.g., Silverman v. SmithKlineBeecham Corp.*, October 15, 2007 Order Denying Without Prejudice Plaintiff's Motion for Conditional Collective Action Certification and Notice, attached hereto as Exhibit B (plaintiff's nine nearly identical declarations, which failed to address the similarities or differences between the GSK business units in which the declarants worked, were insufficient evidence to show the group was "similarly situated"); *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A.H 05-3198, 2007 WL 772756, at *14-15 (S.D. Tex. Mar. 12, 2007) (plaintiffs submitted no evidence to support their allegations of being similarly situated; defendant's evidence, on the other hand, showed considerable variation in job duties performed by the putative class); *Simmons v. T-Mobile USA, Inc.*, No. CIV.A.H 06-1820, 2007 WL 210008, at *7-8 (S.D. Tex. Jan. 24, 2007) (holding that, despite producing approximately two dozen declarations, plaintiff was unable to meet his burden of showing a common policy or plan "even under a lenient standard").
[4] Defendant objects to the portions of Plaintiffs' declarations purporting to show that all of GSK's PSRs are similarly situated because the declarations lack foundation, lack personal knowledge, and are based on hearsay.

First, Plaintiffs' declarations do not contain first-hand knowledge of facts adequate to show similarity. Plaintiffs have worked in only two of GSK's numerous sales business units, and in only two of the fifty states. *See* Pls.' Decls. at ¶ 7. The declarations fail to name, much less describe, the numerous business units in which Plaintiffs did not work. Plaintiffs do not contend that they observed or even discussed the job duties in, for example, the Oncology business unit, with anyone in a position to know what those PSRs do each day. Plaintiffs lack factual foundation for opining that all PSR jobs are materially the same.

Instead, the declarations are based solely on Plaintiffs' own limited "personal observations and experiences." Pls.' Decls. at ¶ 4. Plaintiffs allege that they attended meetings, conventions, training sessions, and presentations with unnamed other PSRs, *id.*, but they do not assert that the unnamed "other" PSRs with whom they conversed about their job duties came from other geographic locations or from each of the various other business units. Plaintiffs do not identify any facts establishing that their conversations with other PSRs provided them the detailed knowledge necessary to support a credible claim of similarity. *See id.* Plaintiffs want to include in their collective action, for example, Oncology PSRs in Oregon, Payor Markets PSRs in Massachusetts, and Vaccines PSRs in North Carolina, but there is simply no evidentiary basis for concluding that these PSRs are similarly situated to Plaintiffs, or even that Plaintiffs have any factual foundation for contending that this might be true. This is simply not sufficient. *See, e.g., Trinh*, 2008 WL 1860161, at *4 (finding that plaintiffs' declarations, which were the only "evidence" submitted to support their motion for conditional certification of a collective action, were insufficient to provide even the modest factual showing required at the notice stage; the declarations "provide no real evidence, beyond [plaintiffs'] own speculative beliefs."); *Benson v. West Coast Const.*, No. C06-1630RSM, 2007 WL 445456, at *2 (W.D. Wash. Feb. 6, 2007) (plaintiff's single, self-serving declaration, submitted without any evidence to support the statements contained therein, was insufficient to show that plaintiff was similarly situated to the putative class, "even under [the] lenient [notice stage] standard.").

LEGAL_US_E # 83243091.7

-8-

C. **<u>Plaintiffs Have Offered No Factual Basis for Inferring that the Putative Class Members Were Victims of a Uniform Policy, Plan, or Practice.</u>**

To determine whether a collective action is appropriate, the Court must determine whether there is any factual basis to suggest that the purported members of the collective action were victims of a common policy, plan, or practice. *Wynn v. NBC*, 234 F. Supp. 2d 1067, 1081 (C.D. Cal. 2002). A "plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103-04 (M.D. Ala. 2003).

The Central District of California recently denied conditional certification and notice in a case nearly identical to this one, *Silverman v. SmithKline Beecham Corp.*, Case No. CV-06-7272 DSF. In an Order dated October 15, 2007, attached hereto as Exhibit B, the *Silverman* court found that David Silverman, a GSK PSR who sought conditional certification of a nationwide collective class of PSRs whom he alleged had been misclassified as exempt under the FLSA, had not submitted evidence showing that he and the putative class were "similarly situated." Ex. B at 3. Silverman submitted nine nearly identical declarations from current and former PSRs; however, none of the declarations addressed the differences between the GSK business unit(s) in which the declarants worked. *Id.* at 2-3. The court found that the declarations presented only a "narrow, potentially unrepresentative sample in support of a broad conclusion," and denied conditional certification and notice because Silverman failed to provide "at least some evidence" of similar employment practices across all GSK business units. *Id.* at 3.

Plaintiffs offer no more evidence of commonality with respect to GSK's alleged policy, plan, or practice of depriving them of overtime compensation than Silverman did. Even with respect to the basic question of whether PSRs uniformly work more than 40 hours per week, Plaintiffs' evidentiary showing is deficient. Plaintiffs' declarations state generally that PSRs "routinely work in excess of forty hours in a workweek," and that Plaintiffs in fact worked such a schedule. Christopher Decl. at ¶¶ 53-4; Buchanan Decl. at

¶¶ 56-7. There is no other evidence provided, however, suggesting that such a work practice applied broadly to all sales representatives, across all geographical or functional units. Plaintiffs' vague and conclusory evidence cannot demonstrate that other sales representatives throughout the country, across all business units, worked in excess of forty hours per week, much less that any person who did so was required to work beyond forty hours per week pursuant to anything more than an individualized directive from his own local supervisor. As such, Plaintiffs have failed to make even a "rudimentary showing of commonality." *Barron*, 242 F. Supp. 2d at 1103-04.

## IV. THE PROBATIVE EVIDENCE DEMONSTRATES THAT PUTATIVE COLLECTIVE CLASS MEMBERS ARE NOT SIMILARLY SITUATED

Plaintiffs have failed to carry their burden to provide a sufficient evidentiary basis demonstrating that the group they seek to represent is sufficiently homogenous to warrant conditional certification and notice. That should end the Court's inquiry.

Plaintiffs' meager declarations, however, are not the only evidence before the Court. The declarations submitted by Defendant with this brief establish that myriad differences among the putative collective class members preclude any finding that they are "similarly situated."

### A. The Duties Performed by Plaintiffs and the Putative Collective Class Members That Are Determinative of the FLSA's Exemptions Are Not Materially the Same.

As noted above, although employees' jobs need not be identical for them to be deemed "similarly situated," the proposed collective class must be sufficiently homogeneous to allow a comparatively small number of individuals to "tell the story" of all those who will not actually testify on their own behalf. If representative proof cannot be used, the collective action process provides no efficiencies and the "similarly situated" standard is not met. Although this motion does not require the Court to decide whether any or all of GSK's PSRs are exempt from the FLSA's overtime provisions, it does

require the Court to identify the factors upon which the FLSA exemption question will ultimately turn, because those are precisely the factors as to which employees must be "similarly situated" in order for a collective action to be appropriate. *See generally Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 477 (S.D.N.Y. 2008) (denying notice to a putative collective class of PSRs because the PSRs likely qualified for the administrative exemption).

Plaintiffs assert that all PSRs, including themselves, are similarly situated because they share the same primary job duty, are subject to similar policies and procedures, and do not receive overtime pay. Pls.' Mot. at 4-9. These facts alone, even if they were true (they are not), are insufficient to warrant conditional class certification. *See Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266 (MLC), 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007) ("Employees' status under the FLSA may vary, even if they have the same job title, if their job responsibilities and duties differ among each other…[S]uch differences are relevant to the statutory criteria of the FLSA exemptions.").[5] There may be significant differences in job responsibilities among a group of employees who share the same job title, much less among a group of employees who have different specific job titles, all generically referred to by Plaintiffs as "pharmaceutical representatives," and those differences may require an individualized determination as to FLSA exemption status. *See, e.g., id.* *3 (denying conditional certification of a class of PSRs because differences between the PSRs' job responsibilities and duties showed that their exemption status under the FLSA may vary among plaintiffs and potential collective action members). Thus, the question is whether Plaintiffs have made an evidentiary showing (rather than generalized accusations) that the GSK PSRs' day-to-day tasks are materially the same

---

[5] *See also Threatt v. CRF First Choice, Inc.*, No. 1:05CV117, 2006 WL 2054372, at *13 (N.D. Ind. July 21, 2006) ("[A]ctual facts govern the relevant analysis, not mere policies and procedures. 'Whether similarly situated employees exist depends on the employees' actual qualifications and day-to-day duties, rather than their job descriptions.'") (citations omitted); *King v. West Corp.*, No. 8:04CV318, 2006 WL 118577, at *14 (D. Neb. Jan. 13, 2006) ("The members of the proposed opt-in class have the same job title, and essentially the same job description[] [but] employees with the same job title are not 'similarly situated' for the purposes of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.").

with respect to the factors pertinent to their exempt status. 29 U.S.C. § 213(a)(1) (2006).[6]

### 1. Application of the Outside Sales Exemption Turns on an Array of Factually Complex Factors.

Under the FLSA, an exempt outside salesperson is an individual "[w]hose primary duty is[] making sales…or obtaining orders or contracts for services…and [w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a) (2008). The factors to be considered include whether: (1) "the job was advertised as a sales position and the employee was recruited based on sales experience and abilities;" (2) the salesperson received "[s]pecialized sales training;" (3) the salesperson's "[c]ompensation [was] based wholly or in significant part on commissions;" (4) the salesperson was required to independently solicit new business; and (5) the salesperson "receiv[ed] little or no direct or constant supervision in carrying out daily work tasks." *Barnick v. Wyeth*, 522 F. Supp. 2d 1257, 1262 (C.D. Cal. 2007) (quoting *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 756-58 (W.D. Mich. 2003)). "[N]one of the [relevant factors] can be considered in isolation." *Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003). Rather, courts "must consider the totality of the circumstances in a task-related context." *Id.*

### 2. The Administrative Exemption Inquiry Also Turns on Complex Factual Determinations.

To qualify for the administrative exemption an employee must (1) earn no less than $455 per week, and must perform as his primary duty (2) "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" that (3) "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2008). The regulations identify a non-exclusive list of job types that meet this requirement, including advertising, marketing, and public relations; in addition to typical administrative roles

---

[6] GSK does not intend to limit its defenses by focusing on the two exemptions described in this Opposition. Other exemptions may also apply.

LEGAL_US_E # 83243091.7

-12-

such as finance and human resources. 29 C.F.R. § 541.201(b) (2008). The regulations also provide a long non-exhaustive list of factors to consider in determining whether the work involves discretion and independent judgment. 29 C.F.R. § 541.202(b) (2008). Again, the exemption determination must be made in "light of all the facts involved in the particular employment situation in which the question arises." *Id.*

### B. Material Differences Exist Among the PSRs on Factors Directly Related to the Exemption Questions.

As noted above, Plaintiffs' declarations are entirely silent on almost all of the critically important factors on which the outside sales and administrative exemption determinations will ultimately turn. They say nothing, for example, about whether Plaintiffs' or the putative class members' jobs were advertised or denominated as sales jobs, whether the incumbents in each of the different PSR jobs receive specialized sales training, or whether the various categories of PSRs in the putative collective class were expected to solicit new business. They say nothing about whether Plaintiffs' or the putative class members' work as PSRs was directly related to GSK's management or general business operations or whether PSRs in all GSK business units exercise discretion and independent judgment with respect to matters of significance.

Defendant's declarations, by contrast, speak directly to the many factors relevant to determining the applicability of both the outside sales and administrative exemptions. Plaintiffs contend that PSRs market GSK's products by urging healthcare professionals to write prescriptions for GSK's pharmaceuticals. Pls.' Mot. at 4. Defendant's declarations demonstrate that PSRs have different types of customers and make different types of sales depending upon the business unit for which they work. A PSR in the Payor Markets division sells GSK's products by encouraging health care, managed care, and insurance plans to put GSK products on their formulary (i.e. approved drug list). McGowan Decl., attached hereto as Exhibit C, at ¶ 7. A PSR in the Vaccines division sells GSK's products by encouraging physicians, hospitals, prisons, county facilities, pharmacy buyers and others to place orders to directly purchase GSK's vaccine products. Wells Decl., attached

hereto as Exhibit D, at ¶¶ 6, 8-9. Even within the business units, PSRs in different subgroups cater to unique customers and make different types of sales. Within General Pharma, for example, a PSR in the Respiratory group sells GSK's products by encouraging physicians to write prescriptions with which patients may purchase GSK's products. Kemp Decl., attached hereto as Exhibit E, at ¶ 7. A PSR in the Senior Care Sales subgroup of the Medical Center Sales group within General Pharma sells GSK's products both by encouraging physicians working for nursing homes to write prescriptions for GSK pharmaceuticals and also by convincing long term care pharmacies and consultant pharmacists to stock GSK products. Burk Decl., attached hereto as Exhibit F, at ¶¶ 8-9.

Plaintiffs allege that all PSRs receive standardized training. Pls.' Mot. at 4, 6; Christopher Decl. at ¶ 38; Buchanan Decl. at ¶ 42. While PSRs may undergo an initial round of standardized training when they begin working for GSK, the subsequent training they receive varies according to the business unit for which they work and the GSK products they sell. *See, e.g.*, Burk Decl. at ¶ 10; Kamerman Decl., attached hereto as Exhibit G, at ¶ 11.

PSRs receive incentive compensation, but that, too, varies depending on the business unit, each of which establishes its own incentive compensation program. Pellegrino Decl., attached hereto as Exhibit H, at ¶¶ 7-13, 20-23. For example, at this time PSRs in the Payor Markets business unit receive incentive compensation based on their success in meeting subjective Management by Objectives (MBOs), McGowan Decl. at ¶ 10, whereas PSRs in the Oncology business unit receive incentive compensation based on an objective measurement of provider prescription frequency. Clark Decl., attached hereto as Exhibit I, at ¶ 12. Even within business units, PSRs who work for different subgroups may receive incentive compensation on differing bases. For example, at this time, PSRs in the Medical Center Sales group within General Pharma receive incentive compensation based on revenue growth for the products they sell, Kamerman Decl. at ¶ 12, PSRs in the Respiratory group within General Pharma receive incentive

1   compensation that based on either market share or sales volume increases, depending on
2   the drugs sold, Lopato Decl., attached hereto as Exhibit J, at ¶ 11, and PSRs in the
3   Cardiovascular group within General Pharma receive incentive compensation based on the
4   number of prescriptions written for the products they sell. Atalla Decl., attached hereto as
5   Exhibit K, at ¶ 9.
6       Plaintiffs allege that PSRs are required to "follow GSK approved scripts" when
7   interacting with providers, Pls.' Decs. ¶ 19; however, Defendant's declarants refute these
8   allegations. See, e.g., Abreu Decl., attached hereto as Exhibit L, at ¶¶ 8; Clark Decl. at ¶
9   10; Lopato Decl. at ¶ 9; Wells Decl. at ¶ 13; Burk Decl. at ¶ 11; Atalla Decl. at ¶ 10. In
10  fact, the opposite is true. PSRs all exercise discretion and independent judgment, to
11  varying degrees depending on the business unit for which they work and their level of
12  seniority. For example, a Senior Executive Therapeutic Specialist in the Cardiovascular
13  group of General Pharma identifies medical providers who are decision-makers regarding
14  the purchase of pharmaceuticals for hospital formularies and develops an in-depth
15  knowledge and understanding of the products for which he is responsible so that he can
16  tailor his sales methodologies to each provider's needs. Acosta Decl., attached hereto as
17  Exhibit M, at ¶ 14. A Regional Account Manager in the Payor Markets division must
18  develop strategies for selling GSK products to insurance plans, who will include the
19  products on their formularies, but also must negotiate contracts and rebates on the GSK
20  products that will be included on those formularies. McGowan Decl. at ¶¶ 8-9. A Senior
21  Executive Clinical Specialist in the HIV and Immunology division does not provide
22  product samples (contrary to Plaintiffs' allegations that *all* PSRs provide samples, Pls.
23  Decl. ¶ 10.) and, therefore, is expected to discuss detailed clinical information and
24  developments in the HIV area. Abreu Decl. ¶ 13.
25      These differences, and many others, will have a material impact on the day-to-day
26  activities of each GSK sales representative. The typical activities of a sales representative
27  vary greatly both within and across business units.
28      Even if the Court were to accept *all* of the declarations before the Court as true —

Plaintiffs' and Defendant's —the big picture they collectively portray is one in which the members of the putative class vary significantly in the characteristics that will be directly relevant to the Court's determinations in this matter. These differences are meaningful, and indeed, the Court's analysis may ultimately turn on these very factors. On the undisputed record before the Court, Plaintiffs cannot be considered "similarly situated" to the putative collective class of many thousands of current and former GSK sales representatives.

## V. THE FORM OF NOTICE SUGGESTED BY PLAINTIFFS IS DEFECTIVE AND DECEPTIVE; THE PARTIES SHOULD BE REQUIRED TO MEET AND CONFER SHOULD A FORM NOTICE BE NEEDED

As explained above, no notice is warranted on this record. In any event, however, the Court should not approve the form of notice Plaintiffs have suggested. Any notice the Court might ultimately require will need to account for the scope of any collective class the Court may certify. Moreover, the notice Plaintiffs propose is one-sided and contains numerous erroneous and/or objectionable provisions. For example, Plaintiffs propose a 90-day deadline for opt-ins to file consent forms. Pls.' Mot. at 14. The vast majority of reported decisions afford opt-ins 30 days or less from the date of the court order approving notice or from the date on which the notices are mailed. *See, e.g., King v. ITT Cont'l Baking Co.*, No. 84 c 3410, 1986 WL 2628, at *6 (N.D. Ill. Feb 18, 1986) (30 days); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 421 (W.D.N.C. 1984) (30 days); *Held v. Nat'l R. R. Passenger Corp.*, 101 F.R.D. 420, 423 (D.D.C. 1984) (30 days); *Johnson v. American Airlines, Inc.*, 531 F. Supp. 957, 962 (N.D. Tex. 1982) (21 days). Plaintiffs' proposed form also is ambiguous about whether this filing deadline is mandatory.

In addition, Plaintiffs' suggested form erroneously would require opt-in plaintiffs to accept representation by Plaintiffs' counsel. In fact, any opt-in plaintiffs are entitled to the representation of their choice, and should be so informed if any notice is required. *See, e.g., Schwed v. G.E. Corp.*, 159 F.R.D. 373, 379 (N.D.N.Y. 1995) ("it is entirely your

decision [as to] whether you prefer to be represented by the present plaintiffs' attorney or by an attorney of your own choosing"); *King*, 1986 WL 2628, at *6 (sample notice with appropriate language regarding legal representation); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 447, 449 (N.D. Ill. 1982) (same).

Many other errors appear in Plaintiffs' proposed notice.[7] Defendant is confident that if the Court ultimately determines that notice is necessary, such errors can best be resolved through a face-to-face meet-and-confer session between the parties, subject to judicial resolution of any short list of disputed issues.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

DATED: April 6, 2009

JAY A. ZWEIG
BRYAN CAVE LLP

BARBARA L. JOHNSON
DONNA D. MELBY
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Barbara L. Johnson

Attorneys for Defendant
SmithKline Beecham Corporation

---

[7] Among other things, Plaintiffs' notice inadequately describes the definition of the proposed collective class, just as Plaintiffs' motion does.