**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Shane Christopher; Frank Buchanan, <br><br> Plaintiffs, <br><br> vs. <br><br> SmithKlein Beecham Corp., <br><br> Defendant. | No. CV-08-1498-PHX-FJM <br><br> **ORDER** |

The court has before it plaintiffs' motion for conditional class certification (doc. 29), defendant's response (doc.34), and plaintiffs' reply (doc. 47). We also have before us defendant's motion for summary judgment (doc. 52), plaintiffs' response and cross motion for partial summary judgment (doc. 75), defendant's response and reply (doc. 77), plaintiffs' reply (doc. 82), and plaintiffs' motion for leave to file supplemental record in support of motion for conditional class certification (doc. 83), defendant's response (doc. 87), and plaintiffs' reply (doc. 89).

Defendant SmithKlein Beecham Corporation d/b/a GlaxoSmithKlein ("GSK") is in the business of developing, marketing, and selling pharmaceutical products. Plaintiffs Michael Shane Christopher and Frank Buchanan worked for GSK as pharmaceutical sales representatives ("PSR"), and were responsible for marketing and promoting GSK products

to physicians and encouraging them to prescribe those products to their patients. GSK at one time maintained as many as 9,000 PSRs to promote their products. PSOF ¶ 59. Plaintiffs brought this action contending that their jobs regularly required them to work in excess of forty hours per week and that GSK violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay them overtime compensation.

The FLSA requires employers to pay overtime compensation for hours worked in excess of forty hours per week unless a FLSA exemption applies. 29 U.S.C. § 207(a)(1). GSK contends that plaintiffs are not entitled to overtime pay because they fall within either the "outside sales" or the "administrative employee" exemptions. Id. at § 213(a)(1). Due to the remedial nature of the overtime pay requirement, "FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1125 (9th Cir. 2002) (quotation omitted). The employer bears the burden of showing that an exemption applies. Id.

The FLSA's overtime compensation requirement does not apply to "any employee employed . . . in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). An employee is exempt as an outside salesperson if (1) the employee's "primary duty" is "making sales within the meaning of [29 U.S.C. § 203(k)]" or "obtaining orders or contracts," and (2) "is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). The parties do not dispute that plaintiffs customarily and regularly performed their duties away from GSK's offices. They spent the majority of their working time in the field calling on physicians or at home preparing for their calls. Therefore, the only issue in dispute is whether plaintiffs' primary duty as a pharmaceutical sales representative was "making sales" within the meaning of § 203(k).

The FLSA defines "sale" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The regulations provide that "[s]ales within the meaning of section 3(k) of the Act include the transfer of title to

- 2 -

tangible property, and in certain cases, of tangible and valuable evidences of intangible property." 29 C.F.R. § 541.501(b). In promulgating the 2004 regulations, the Department of Labor explained that "[a]n employer cannot meet [the outside sales exemption] unless it demonstrates objectively that the employee, *in some sense*, has made sales." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22162 (Apr. 23, 2004) ("Comments to 2004 Final Rule") (emphasis added). Employees "make sales" if they "obtain a commitment to buy from the customer and are credited with the sale." Id. (quotation omitted). "In borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt." Id. at 22162-63. Therefore, the Department of Labor contemplates that while a sale or order may be processed in different ways, the employee only makes "sales" if his job involves obtaining commitments for purchases that are creditable to his own efforts. There is no requirement that these must be binding commitments.

Here, it was plaintiffs' responsibility as PSRs to call on physicians and discuss the features, benefits, and risks of GSK products. PSOF ¶¶ 15, 22. Their primary objective was convincing physicians to prescribe GSK products to their patients. DSOF ¶¶ 104-06. GSK furnishes PSRs with detailed reports on physicians, including their prescribing habits, their market share, and volume of prescriptions filled. PSOF ¶ 120. These reports identify healthcare professionals who have a higher likelihood of responding to marketing, based in part on how they have historically prescribed and responded to promotional activities. PSOF ¶ 116. The PSRs' efforts are focused on the top 250 physicians in their territory who prescribe for a particular disease state. PSOF ¶ 120.

All PSRs receive extensive specialized training upon hire and throughout the course of their careers with GSK. DSOF ¶¶ 5, 7. PSRs are trained on GSK's program entitled "Winning Practices," in which they learn to drive sales for each promoted product,

- 3 -

collaborate to deliver seamless selling and service, develop expert product knowledge, gain insight into customers, organize sales calls to maximize selling time and results, sell through customer-focused dialogue, and get the best possible commitment on every call. DSOF ¶¶ 8, 9. Each PSR is expected to "close" each physician visit, ideally by requesting a commitment from the physician to prescribe the GSK drug to patients. DSOF ¶ 126.

A PSR's compensation generally consists of approximately 75% base salary and 25% incentive compensation. PCSOF ¶ 10. While it is not possible to directly link a PSR's marketing activities to a particular patient filling a prescription, PSOF ¶ 55, the incentive compensation is based, in part, on the number of prescriptions written by physicians in a PSR's assigned geographic area. DSOF ¶¶ 11-12. Plaintiffs' incentive compensation ranged from 26% to 41% of their total annual compensation between 2004 and 2007. DSOF ¶¶ 64-66, 138-41.

Despite job descriptions and job duties that incorporate standard sales training and methodology, plaintiffs contend that they do not fit within the outside sales exemption because they do not actually execute sales within the meaning of the FLSA. They contend that as PSRs they do not consummate transactions or take orders as required by the regulations. While they acknowledge that they may create a demand for GSK products, Response at 5, they contend this is promotional or educational work, not sales.

Defendant responds that plaintiffs' argument ignores the unique nature of "sales" in the pharmaceutical industry. In the traditional sales model, a salesperson pitches a product to a buyer, the buyer purchases the product, and the salesperson leaves with cash in hand. But that model does not fit the pharmaceutical industry. The Food and Drug Administration heavily regulates the pharmaceutical industry and prohibits pharmaceutical companies from selling directly to either physicians or patients. Instead, patients must obtain prescriptions from physicians, and subsequently purchase the prescribed drugs from pharmacies. However, without a prescription from a physician, there is no sale. GSK argues that in the pharmaceutical industry the true customer, in other words the individual who generates the sale, is the physician. Sales volume is directly and exclusively driven by the number of

prescriptions written by physicians, and plaintiffs' job was to encourage such prescriptions. Therefore, according to GSK, PSRs make sales in the manner that sales are made in the pharmaceutical industry. See DSOF ¶¶ 102, 107 (Plaintiff Buchanan concedes that he made sales in the way that sales are made in the pharmaceutical industry.).

Plaintiffs disagree, contending that the only "sale" that occurs in the pharmaceutical industry is from GSK to wholesalers who in turn sell the drugs to pharmacies and hospitals. But wholesalers, pharmacies, and hospitals purchase their drugs, not because a persuasive salesperson touts the merit of the product, but because of the number of prescriptions the wholesalers, pharmacies, and hospitals expect to fill. Ultimately the demand is driven by prescriptions written by physicians.

Several courts have considered whether PSRs "make sales" within the meaning of the outside sales exemption and have reached conflicting conclusions. Some have adopted a strict construction of the term "sale," concluding that because PSRs do not directly consummate actual sales, they do not fit within the exemption. Ruggeri v. Boehringer Ingelheim Pharm., Inc., 585 F. Supp. 2d 254, 268 (D. Conn. 2008) ("PSRs lack [the] capacity to sell, and physicians lack [the] capacity to purchase," in the strictest sense of these terms, therefore they cannot fit within the outside sales exemption); Smith v. Johnson & Johnson, No. 06-CV-4787, 2008 WL 5427802 (D.N.J. Dec. 30, 2008) (same).

Others have concluded that adopting such a "constricted reading of the FLSA ignores the Act's spirit, purpose, and goals." In re Novartis Wage & Hour Litigation, 593 F. Supp. 2d 637, 648 (S.D.N.Y. 2009), see also Schaefer-LaRose v. Eli Lilly & Co., No. 07-CV-1133, 2009 WL 3242111 (Sept. 29, 2009); Harris v. Auxilium Pharm., Inc., No. 07-CV-3938, 2009 WL 3157275 (S.D. Tex. Sept. 28, 2009). These courts recognize that in all relevant respects a PSR's encounter with a physician is the functional equivalent of an outside sale. PSRs "make sales by obtaining commitments to prescribe . . . drugs from physicians. They are credited with those sales and compensated accordingly by means of incentive payments." In re Novartis, 593 F. Supp. 2d at 653. As such, PSRs "qualify as exempt outside salespersons." Id.

There is nothing striking about the characteristics of a traditional "sale" that explains the exemption for outside sales work. In fact, the FLSA and the Department of Labor define the term "sale" somewhat loosely. The Act defines a sale as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, *or other disposition*." 29 U.S.C. § 203(k). The Department of Labor is of the view that the exemption requires a sale "*in some sense*," Comments to 2004 Final Rule, 69 Fed. Reg. at 22162. In both cases, the definitions provide for an interpretation of "sale" beyond a constricted, traditional sense of the word.

Shortly after the enactment of the FLSA, the Tenth Circuit recognized the rationale underlying the outside sales exemption:

> Such salesm[a]n, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

Jewel Tea Co. v. Williams, 118 F.2d 202, 207-08 (10th Cir. 1941). Outside salespeople are exempt from the overtime compensation requirement because of the distinct characteristics of their jobs—incentive pay based on individual effort; flexible, unregulated work hours; and minimal supervision "mak[ing] adherence to an hours-based compensation scheme impractical." See In re Novartis, 593 F. Supp. 2d at 649.

The Department of Labor more recently recognized that the legislative history of the § 213(a)(1) exemptions "were premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." Comments to 2004 Final Rule, 69 Fed. Reg. at 22124. Moreover, the kind of work these employees performed was "difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult." Id.

Each of these factors directly correlates with a PSR's work. PSRs are not hourly workers, but instead earn salaries well above minimum wage—up to $100,000 a year. Bonuses give them an incentive to increase their effort and work longer hours. They receive bonuses in lieu of overtime. Their work is largely unsupervised. They do not punch a clock or otherwise verify their hours, making compliance with overtime provisions unrealistic. "To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman." Jewel Tea Co., 118 F.2d at 208.

The statute and supporting regulations defining the outside sales exemption were adopted in 1938, long before the development of the pharmaceutical sales industry, and few clarifications or changes have been enacted since then. The statute and regulations are intended to broadly address a multiplicity of industries found in the national economy and accordingly provide flexibility in the definition of a "sale." See 29 U.S.C. § 203(k) (a sale includes "any other disposition"). Even the Department of Labor recognizes this flexibility by suggesting that there must be a sale "in some sense," such as "obtaining a commitment to buy." Comments to 2004 Final Rule, 69 Fed. Reg. at 22162-63. The pharmaceutical industry is unique in that federal regulations prohibit a direct sale to an end-user, thereby shifting the focus of sales efforts from the consumer to the physician—the catalyst behind any pharmaceutical sale. A PSR's ultimate goal is to close an encounter with a physician by obtaining a non-binding commitment from the physician to prescribe the PSR's assigned product. In this highly regulated industry, that is the most a PSR can achieve. His compensation is designed to encourage him to work during his lunch hour and into the evening, hosting meals, meetings, and presentations, all for the purpose of increasing the sales of his assigned products in his territory, with a payoff in the form of bonuses. In all regards, a PSR engages in what is the functional equivalent of an outside salesperson and to hold otherwise is to ignore reality in favor of form over substance. We decline to adopt a hyper-technical construction of the regulations that runs counter to the purpose of the Act. Instead, because plaintiffs plainly and unmistakably fit within the terms and spirit of the

exemption, we conclude that they are exempt employees under the outside sales exemption.[1] Pharmaceutical sales representatives are salespeople.

Therefore, **IT IS ORDERED GRANTING** GSK's motion for summary judgment (doc. 52), and **DENYING** plaintiffs' cross motion for summary judgment (doc. 75).

**IT IS FURTHER ORDERED DENYING** plaintiffs' motion for conditional class certification as moot (doc. 29), and **DENYING** plaintiffs' motion to supplement the record as moot (doc. 83).

The clerk shall enter final judgment.

DATED this 20th day of November, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

---

[1] Because we conclude that plaintiffs qualify as exempt employees under the FLSA's outside sales exemption, we need not consider whether they also fit within the administrative employee exemption. Moreover, our summary judgment ruling in favor of GSK obviates the need to consider plaintiffs' motion for conditional class certification.

- 8 -